UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRACY ANNE HOFFMAN,

    Plaintiff,

v.

MICHAEL A. ROLF C.P.A. & CO., et al.,

    Defendants.

Case No. 19-cv-01336-PJH

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 9

Defendants' motion to dismiss came on for hearing before this court on May 29, 2019. Plaintiff Tracy Anne Hoffman appeared through her counsel, Wendy Musell. Defendants Michael A. Rolf C.P.A. & Co. ("Rolf CPA") and Michael A. Rolf ("Rolf"), an employee of Rolf CPA, appeared through their counsel, Kristen Iversen. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion, for the following reasons.

**BACKGROUND**

Rolf CPA is a public accountant and financial advisement company incorporated in Ohio, with its principle place of business in the same state. Dkt. 1, Compl. ¶ 5. Rolf resides in Kentucky. Id. ¶ 6. Plaintiff is a current resident of California and has lived in California at all times relevant to the conduct alleged in the complaint. Id. ¶ 4.

Since at least 1996, defendants provided plaintiff with tax-related accounting services and, allegedly, financial services. Over the approximately 20 years that defendant provided those services to plaintiff, plaintiff lived in several states, including Ohio, Florida, and California. Id. ¶ 3.

In May 2008, plaintiff accepted a position with Genentech and thereafter relocated to San Francisco. Compl. ¶ 9. Prior to accepting that job, Rolf allegedly provided plaintiff with advice regarding Genentech-related compensation and benefits, including advice about plaintiff's receipt of stock options. Id. ¶ 10. Rolf allegedly continued to provide plaintiff with financial advice throughout her employment with Genentech. Id. ¶¶ 11-23. Throughout that time, Rolf advised, as relevant here, that plaintiff should not sell her Genentech-awarded stock options, which plaintiff maintained in a UBS investment account. Id.

Through early-2015, plaintiff primarily, if not exclusively, communicated with Rolf directly. Id. ¶¶ 24, 28. However, beginning sometime in 2015, other Rolf CPA employees began joining plaintiff's calls with Rolf and, towards the end of 2015 and continuing into 2016, Rolf CPA employees other than Rolf returned plaintiff's calls and represented to plaintiff that they were communicating with Rolf. Id. ¶¶ 28-29.

In early and mid-2015, plaintiff shared work-related concerns with Rolf, including the concern that her employment with Genentech may not continue. Id. ¶¶ 25, 26. In early 2016, plaintiff informed defendants that that concern had realized, and that she was now in discussions with her employer about the cessation of her employment. Id. ¶ 26. On April 6, 2016, Genentech terminated plaintiff's employment. Id. ¶ 26. At some point later in 2016, plaintiff informed defendants of that fact. Id.

In October of that year, "plaintiff was notified by UBS that a sixty [ ] day exercise period [on plaintiff's stock options] had started to run on April 6, 2016, expiring in June 2016." Id. ¶ 34. By failing to take any action on her stock options, plaintiff allegedly "lost investment equities in excess of $175,000." Id. ¶¶ 34-35.

Also in October 2016, Erik Spille, a Rolf CPA employee, informed plaintiff that Rolf "could no longer work with clients given serious cognitive impairments[.]" Id. ¶ 30. Plaintiff alleges that Spille admitted that defendants had been aware of Rolf's illness for at least a couple of years, which was why other employees had become involved in defendants' communications with plaintiff. Id. Further, according to the complaint,

2

though Rolf CPA employees had been trying to stay on top of Rolf's book of business, "they did not really know what . . . Rolf had been doing." Compl. ¶ 30

Based on the above facts, plaintiff asserts five causes of action, each of which is premised on one or both of the following theories of liability: (1) defendants failed to inform plaintiff that she should sell her Genentech stock options prior to the June 2016 expiration date; and (2) defendants failed to inform plaintiff of Rolf's deteriorating mental condition. See Id. ¶¶ 39-40, 47-48, 60-61, 67-69, 81.

On April 17, 2019, defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over both defendants.[1]

In support of that motion, defendants submitted the declarations of Todd Zech, president of Rolf CPA, and Joan Rolf, Michael Rolf's wife. Dkt. 9-2; Dkt. 9-3. The declarants attest, respectively, that Rolf CPA and Rolf have no connection with California. Dkt. 9-3 ¶¶ 3-4, 7; Dkt. 9-2 ¶ 2. In addition, Zech testifies that Rolf CPA "does not solicit or engage in business in California." Dkt. 9-3 ¶ 4. Similarly, Zech testifies that Rolf CPA did not solicit plaintiff's business while she was in California, that all services performed on plaintiff's behalf were performed in Ohio, and that no Rolf CPA agent traveled to California to perform services for plaintiff. Id. ¶ 7. In response to this evidence, plaintiff submitted her own declaration, which states, as relevant here, that Rolf promoted his knowledge about California to plaintiff and that defendants prepared plaintiff's federal and California state tax returns for the years spanning 2008 to 2016. Dkt. 17-1 ¶¶ 9, 13.

**DISCUSSION**

The party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating jurisdiction. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts

---

[1] In the alternative, defendants move the court to transfer this action to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). Because the court grants defendants' Rule 12(b)(2) motion to dismiss, the court DENIES defendants' § 1404 motion as MOOT.

3

uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the plaintiff's favor. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 121-122 (2014).

In the absence of general jurisdiction—which neither party contends exists here—a court may exercise specific jurisdiction over a defendant if his less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with that activity. Hanson v. Denckla, 357 U.S. 235, 250–53 (1958); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924-25 (2011). The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (internal quotation marks omitted). For a State to exercise jurisdiction consistent with due process, that "relationship must arise out of contacts that the defendant himself creates with the forum state" and must be analyzed with regard "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 284-85 (emphasis in original; internal quotation marks omitted).

To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Ninth Circuit employs a three-part test:
(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum

4

> or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Morrill v. Scott Financial Corp., 873 F.3d 1136, 1142 (9th Cir. 2017). Plaintiff bears the burden of satisfying the first two prongs. Id. If plaintiff does so, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Id. (internal quotation marks omitted).

Regarding the first prong, the parties agree that the "purposeful direction test" applies because plaintiff's claims sound in tort. See Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017). The purposeful direction test itself has its own three part test, which requires plaintiff to show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.

Because the court finds that plaintiff has not shown that defendants committed an intentional act expressly aimed at California, the court GRANTS defendants' motion and declines to reach the remaining specific jurisdiction prongs.

First, the court finds that plaintiff has not shown defendants committed an intentional act. An intentional act for purposes of the purposeful direction test is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe Co. v. A–Z Sporting Goods, Inc., 704 F.3d 668, 674 (9th Cir. 2012). Here, plaintiff only alleges omissions. Specifically, plaintiff alleges that defendants failed to tell her: (1) that she should exercise her stock options before they expire, and (2) that Rolf's mental health had deteriorated. While plaintiff perhaps felt the consequences of those alleged failures within California, that does not convert defendants' alleged failure to act into an "intentional act." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir.

2004) ("The result or consequence of the act is relevant, but with respect to the third part of the Calder test—harm suffered in the forum." (internal quotation marks omitted)). Because plaintiff has not shown that defendants committed an intentional act sufficient to create specific jurisdiction, the court GRANTS defendants' motion.

Second, and independently fatal, the court finds that even if defendants' omissions were intentional acts, they were not expressly aimed at California. The "express aiming" analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." Picot, 780 F.3d at 1214. To be satisfied, the "express aiming" inquiry requires "something more" than "a foreign act with foreseeable effects in the forum state." A-Z Sporting, 704 F.3d at 675. In Walden v. Fiore, the Supreme Court explained that to comport with due process, the defendant's relationship with the forum state "must arise out of contacts that the defendant himself creates with the forum State." 571 U.S. at 284 (emphasis in original). The contacts cannot be based on the "unilateral activity" of the plaintiff. Id. at 1123. Indeed, "the Supreme Court rejected [the] conclusion that defendants' knowledge of [the plaintiffs'] strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts" to exercise specific jurisdiction. Axiom Foods, 874 F.3d at 1069-70 (discussing Walden; alterations in original). A defendant's contacts must be with the forum state itself, not simply with persons who reside there. Axiom Foods, 874 F.3d at 1070.

Here, even assuming defendants committed an intentional act by failing to tell plaintiff to sell her stock options or by failing to tell plaintiff about Rolf's mental health, neither of those actions targets California. Rather, those actions target plaintiff, who happens to reside in California. At most, plaintiff's allegations show that defendants continued to expressly aim at plaintiff, regardless of the forum she resided in.[2] That is not enough: The plaintiff "cannot be the only link between the defendant and the forum."

---

[2] Indeed, plaintiff's complaint and the conduct alleged therein would look nearly exactly the same if she happened to reside in a state other than California. That alone indicates that defendants only suit-related contact to California is plaintiff.

6

1  Walden, 571 U.S. at 285.  Accordingly, the court finds that defendants' motion must be

2  GRANTED for the additional reason that plaintiff has not shown that defendants' alleged

3  intentional acts, if any, expressly targeted California.

4        As the court finds that plaintiff has not shown that defendants purposefully directed

5  their activities at the forum state—the first prong of the specific jurisdiction test—the court

6  needs not reach the remaining two prongs of the test.

## CONCLUSION

      For the foregoing reasons, the court finds that it lacks personal jurisdiction over Rolf CPA and Rolf.  Accordingly, defendants' motion to dismiss is GRANTED and plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated: June 12, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge